Parker, J.
[After reciting the substance of the pleadings.] These pleadings present to us the general question, whether, under the facts disclosed thereby, the plaintiff can recover in this action; anc to decide this question, we must inquire, 1st. Whether the facts alleged in the plea are a sufficient bar to the action, if unanswered; and if they are, 2. Whether the conclusion from those facts is sufficiently avoided by the plaintiff’s replication.
* A satisfactory construction of the condition of the bond [ * 460 ] is not unattended with difficulty. Whether it was the intention of the parties that the payment of the money borrowed, with marine interest, should depend upon a literal performance of the voyage, and a return of the vessel to some port within the commonwealth, or whether, if she never returned, but was not lost by one of the misfortunes specified in the condition, viz. “ perils of the seas, fire, or enemies of the United States,” the money was to be paid, are questions about which I have been a long time in doubt.
On the one hand, it would seem, that if a return of the vessel was the fact upon which the right of the plaintiff to demand his money was to depend, the subsequent specification of accidents, by which she might be lost, was unnecessary; and on the other hand, the nature of this contract, and the common understanding, that the duty of an obligee to pay, depended upon a safe termination of his voyage, seem to forbid a restriction of the causes of his discharge to those which are enumerated, provided there was an eventual nonperformance of the voyage, without the fault of the obligor.
My mind, however, is at last satisfied that the specification of the perils, by which the vessel might be lost, does not affect the former part of the condition, and that a substantial performance of the voyage by the vessel is necessary to entitle the plaintiff to recover upon this contract. But even if it were required of the defendant, in order to acquit himself of this bond, to show that there was a loss in one of the ways mentioned in the condition, I think the facts in the case bring it within one of the stipulated causes of loss.
Whether the terms perils of the seas comprehend every species of marine accident, when accidents of several sorts are mentioned in addition to perils of the seas, I shall not undertake to decide; but I am satisfied that the taking, as alleged in the plea in bar, is, to all legal intents, a capture by the enemies of the United States; and if *404 it had been so alleged by the defendant, the facts would have supnorted his plea. It is so understood in questions of insurance; and the doctrine is fully supported by the English writers on insurance, and by continental jurists of high authority.
[ * 461 ] *1 am, therefore, of opinion that the plea in bar is a sufficient answer to the plaintiff’s action", unless it is avoided by the facts set forth in the replication; and whether it is so avoided or not, is the second question, which it is necessary to consider.
By the replication it appears that the sentence of condemnation was reversed, and that the value of the vessel, cargo, and freight, in money, with interest, was awarded to the defendant, and has been received by him before the commencement of this action. It is contended by the plaintiff, that under these circumstances there was no loss of the vessel, and that, therefore, as the money secured by the bond has not been paid, the bond is forfeited; and he likens it to cases of insurance, in which, if a restoration takes place before abandonment, the insured cannot recover for a total loss.
It is true that contracts of bottomry are in many respects gov erned by the same principles as contracts of insurance ; it is also true that in other respects' they are essentially different. In order to avoid a bottomry bond on the ground of loss of the vessel, the loss must be total without abandonment. Circumstances, which would enable an insured to recover after abandonment, are not alone sufficient to enable a borrower on bottomry to avoid his contract ; such as a defeat of his voyage, or temporary restraint of his vessel; but On return of his vessel, whatever may have been the events of the voyage, he is held to pay the money borrowed.
The vessel in this case was captured as prize, was condemned, and never returned to her owners, but probably was destroyed in consequence of her detention by the captors. Here was a total loss, which discharged the defendant from his bond. But it is said that the defendant has received her value, so that virtually there was no loss. In equity, the plaintiff’s case is undoubtedly very strong; and I can see no principle of mercantile honor, upon which the money can be withheld by the defendant; but we must decide upon established legal principles, and are not at liberty to wander into the field of equity, to do justice to the parties. The question with us is, whether any event, within the condition of the bond, has happened, whereby the obligor is discharged from his contract. The [ * 462 ] facts relied upon by the plaintiff show that * such event did happen, viz. the capture and condemnation of the vessel; and further, they show that she never did return. And although the defendant has recovered her full value, yet I cannot *405 say that there was a performance of the voyage within the meaning of the condition of the bond.
The case of Cook vs. Jennings, cited at the bar, shows that a strict performance of a condition is required to enable one party to enforce his contract against the other. In that case, the acceptance of the deals by the party, for whom they were transported, was held not to entitle the owner of the ship to freight, because they were never delivered at the place stipulated in the covenant. This is not a stronger case in equity than that was; yet there the Court felt bound to decide on strict legal principles against the manifest justice of the claim to compensation.
To this purpose also may be cited the case of Little & Al. vs. Holland (25), in which it was decided, in an action upon a covenant to build two houses by a certain day, that the covenant was not performed, by showing, that by the agreement of the parties the time had been enlarged, and that the houses were finished within the enlarged time. The same principle is established in the case of Brown vs. Goodman, contained in a note to the case last cited, where, in an action upon an arbitration bond, in which the time for making the award was stated, an allegation was made that the parties had mutually agreed upon an enlargement of the time, within which enlarged time the award was made, and non-performance alleged as a breach: to this the defendant demurred, and judgment was given for him, after argument. Lord Kenyon said the question was not then to be discussed whether the plaintiff had not some remedy, but whether his remedy lay upon the bond, to determine which they must look to the bond; and there it appeared the award was to be binding, if made within a certain time; but that could never extend the penalty to an award made after that time under a new agreement. To which the other judges assented.
I have been unable, with a great desire to support the plaintiff’s claim, to find any case, in which a bottomry contract, *as such, has been enforced, when the vessel, which was [ * 463 ] the subject of it, did not reach her destined port of delivery. In Joyce vs. Williamson [Marshall, 652], the 'decision was founded upon the ultimate successful termination of the voyage, the vessel having arrived at the stipulated port in safety, although she had met with a temporary detention. So, in this case, had the schooner, after being captured and carried in, been restored, and found her way home, and earned her freight, the contract would have 'emained in force; but, on the contrary, she never did return. *406 but perished, and a compensation in money has been paid for her Whether this compensation is equally advantageous to the defendant as an uninterrupted prosecution and successful termination of the voyage would have been, we have no means of ascertaining.
A decision of this case has been delayed, from a strong desire entertained by those of the Court, who doubted of the plaintiff’s right to recover, to meet with some authorities which would justify a contrary opinion, and from an apprehension that the plaintiff would lose money so equitably due, unless he recovered it in this action. The research, which I have been able to make, has satisfied me that the plaintiff has lost his remedy upon the bond; but that in another action substantial justice may be done him. If it be true that the lender on bottomry is entitled to the effects saved in case of a loss, there can be no doubt that those effects having come into the hands of the defendant, he is accountable for them to the plaintiff.
It is true that Lord Mansfield has said, and after him Lord Kenyon, that by the law of England, in contracts of bottomry, there is no average or salvage; but this opinion was not given with reference to any question immediately before them, and it is doubted by Parle and Marshall.
Upon examining the treatises of Emerigon, Pothier, and Valin, I think there can be no doubt, that it is considered in France as a principle of marine law, that the lender has a claim upon the vessel or effects saved, upon whichsoever the risk was taken. By those writers it will appear that, although a contract of bottomry is extinguished by any of the marine perils upon which the loan [ * 464 ] has been placed, yet that the lender * can pursue the effects saved, wherever they may be, and may maintain an action against the borrower for them, provided they come into his hands.
Here the plaintiff had an interest in the vessel to the value of the sum loaned, with the marine interest which had accrued at the time of the capture. Compensation has been made in money, which must enure to those who have the interest or property. The defendant has received it, and I can see no reason why, in an action for money had and received, he will not be held to restore it to the plaintiff This opinion, however, will not prevent a due examination, should the defendant unreasonably persist in withholding what appears so equitably due; but it is intimated with a hope that an investigation by the defendant’s counsel will end in the payment of the money, and the prevention of future litigation.
Sewall, J.
This general question arises upon the pleadings in *407 this case; whether, considering all the facts alleged and admitted, the defendant is liable in this action for the loan on bottomry disclosed by the condition of his bond ?
For the plaintiff it is contended that the capture and other events alleged in the defendant’s plea were not a discharge, upon the terms of this contract; or that the compensation, which has been made to the defendant for the loss of his vessel and voyage, restored the plaintiff to his demand for the money lent, and enables him to maintain this action.
A loss by enemies of the United States is one of the risks expressly undertaken by the plaintiff, and avoids the bond in this action, by the terms of the condition. The loss stated in the defendant’s plea, is a capture in the course of the voyage, and a condemnation as prize of the vessel, upon which this loan was made.
Taking as prize is in all cases an act of hostility ; and according to Marshall, in his treatise of insurance, if a neutral ship be arrested at sea, and carried into a port belonging to one of the belligerent powers, under pretence that she belongs to the enemy, or that she is laden with enemy’s goods, this must be considered a capture, because it is done as an act of hostility; and the ship’s being after wards restored will not change that, which was originally a capture, into *a detention of princes. And for this [ * 465 __ doctrine he cites the authority of Emerigon (26).
The present case is stronger than that supposed by Marshall; the arrest is proved by the subsequent condemnation to have been a taking as prize. If, however, it were distinguishable from a capture by enemies, it is then a peril not specified, and must be included, I think, in the words perils of the sea, which are likewise undertaken by the plaintiff. In the case of Pickering vs. Berkeley, it was certified by merchants, and confirmed by the decision of the Court, that perils of the sea include a capture by a man-of-war unknown These words, in a large and general sense, include all the accidents and misfortunes to which those engaged in maritime adventures are exposed.
This construction is further justified, when we consider the contract in question as a contract of bottomry, which ex vi termini subjects the lender to all the usual risks undertaken by insurers, where there is no particular exception; and especially as by another and corresponding part of the condition, the payment of the money oorrowed is to depend upon the performance of the voyage upon which the oan was made.
*408 It is averred by the defendant, and not contradicted by the plaintiff, that the vessel never returned to Salem, or any port of discharge; and it has not been pretended that this event was chargeable to the fault or neglect of the borrower, or happened otherwise than by a vis major, a casus fortuitas (27).
The right of the plaintiff to maintain this action, if he has any, must be derived from the subsequent events averred on his part; the reversal of the condemnation and decree of restoration, with the award of compensation for his schooner, cargo, and freight, and for the loss of his voyage, which it is admitted the defendant has received.
In bottomry and respondentia bonds a loss by a capture, which is a mere temporary taking, and which does not occasion a total loss of the property or of the voyage upon which the loan is [ * 466 ] made, will not defeat the demand of the lender. * This was determined in the case of Joyce vs. Williamson; but this decision was placed by Lord Mansfield expressly upon the ground, “ that the voyage in that case was not lost; for the defendant pursued it and earned his freight” (28).
In the report of this decision Lord Mansfield is stated to have said that, by the law of England, there is neither average nor salvage upon a bottomry bond. Mr. Parlc cxtes this opinion as novel; and Sergeant Marshall doubts whether his lordship had the authority of any decided case for the position. If the position be correct, and to be understood as a denial of all remedy for salvage to the lender upon a bottomry bond, on any event of loss with salvage, the common law has not, in this respect, adopted the regulations of the marine law, as it is observed and practised upon by the other commercial nations of Europe. But if it may be understood as a denial of any remedy upon the original contract, the law of England agrees with the law of France; and the rule is analogous to what is observed respecting other maritime contracts.
This is the rule of the common law in the case of seamen’s wages. By the loss of the vessel or voyage, their demand upon the master or owner may be extinct; but they have a remedy upon the salvage ; and the action may be maintained against the master or owner, when the salvage comes into their hands. The case of Cook vs. Jennings was an action of covenant upon a charter-party to recover the freight of certain goods, which the plaintiff had undertaken to carry to Liverpool, to be paid on delivery there. The vessel having been wrecked in her passage, and become incapable of proceeding, the goods were unladed and delivered to the freighters at a port where *409 the vessel was taken to refit, and were there accepted by them. The Court of King’s Bench decided against the action; and Justice Lawrence, in delivering his opinion, observed that the acceptance of the goods by the freighters might be evidence of a new contract (to pay freight for the goods pro rata itineris) ; but here the plaintiff had resorted to the original agreement, under which the defendant only engaged to pay in the event of the ship’s arrival at Liverpool. '
* The difference of opinion among the members of the [ * 467 ] Court upon this case has led me to examine with some care Emerigon’s treatise of contracts on the general adventure, as I construe Contracts a la grosse avanture, a term comprising contracts of respondentia and bottomry; considered as subject to the same rules in every respect.
I have recollected from this treatise the following observations, which appeared to me applicable to the case at bar in a general view of it.
Contracts upon the general adventure may be avoided in two ways, which are to be distinguished. One is, when the contract has in it some objectionable circumstance or defect, which at its origin prevents its legal existence and validity; and the other is, when the contract becomes extinct, expires, or is avoided by a loss of the effects upon which the loan was made. In this last case, the contract, considered in itself, remains substantially unaltered. The borrower is discharged from his obligation, the contract being reduced to the value of the salvage. This is the effect of a condition discharging the borrower, who is liable for the principal loan, and the marine interest, in the event only of a performance of the voyage. It may be said that, in many respects, this avoidance of the contract has the same operation and effect, as an abandonment in a case of insurance. It is unquestionable that the obligation is extinct, if the vessel is lost in the voyage. Such is the nature of the contract upon the general adventure, that if the effects, upon which the loan is made, be lost by misfortune, the contract is deprived of its effect, and the lender can demand nothing. For this he cites the 11th article of the French ordinance, with Valin's Commentary; and he adds from the same author, that this is also the common law of the European nations. After other observations to the same purpose, he adds, the result is, that by an inevitable misfortune, the personal action direct against the borrower is extinct, and the lender retains only a right to a real action (in the language of our jurisprudence an action in rem) upon the salvage from the wr,'ck. The lender may recover from the salvage his loan and matine interest, if the salvage should be adequate to these demands- *410 but if inadequate, he will have no further remedy against | * 468 ] any person. *To be discharged from his engagement, the borrower is not holden to an express abandonment. The inevitable misfortune discharges him ipso jure from any personal action arising upon the contract. All the operations subsequent to the misfortune concern principally the lender, whose right to any action against the borrower ceases, unless he should himself become possessed of the salvage, or be chargeable with some misconduct (29).
Upon these authorities, and because I cannot perceive that a decree of restoration, or an award of compensation, which never enabled the borrower to perform the voyage upon which the loan was made, is to any purpose within the condition of this bond, a substitute for his vessel or voyage, my opinion is against this action. The replication is, I think, bad and insufficient in law. The compensation received by the borrower, the defendant may comprise a salvage, for which he is accountable to the lender, the plaintiff; but a demand of that nature, if it is recoverable, must be maintained in another form of action.
Sedgwick, J.
This is an action of debt brought on a bottomry bond, dated November 25th, 1793, in the penal sum of £300. By the condition it appears that the defendant borrowed of the plaintiff £150, on the bottom of the schooner Charming Sally, bound on a voyage from Salem to one or more ports in the West Indies, and from thence to any port or ports whatsoever, and from thence back to Salem, or port of discharge in this commonwealth. The bond is to be void on the happening of either of two events, which are expressed, viz., “ If the schooner shall perform the said intended voyage or voyages, and the said George (the defendant), his heirs, &c., shall and do well and truly pay unto the said John (the plaintiff), his executors, &c., the full sum of £150, together with three per cent, per month, for interest and adventure from the date hereof until this bond is discharged, and within twenty days next after the said schooner shall arrive at Salem, or port of discharge in this commonwealth ; or in case said schooner shall be lost through perils of the seas, or by fire, or the enemies of the United States, while she is performing the said voyage or voyages.”
[ * 469 ] *To discharge the defendant, therefore, from the penalty of the bond, there must have been either a payment, as expressed in the condition; or the schooner must have been lost by the perils of the seas, or by fire, or by the enemies of the United States. The money was not paid; nor was the schooner lost by the perils of the seas, or by fire.
*411 These observations present the only question in the case, viz., Was the schooner lost by any acts of the enemies of the United States, while she was performing her voyage ?
Without particularizing what is stated by one party and the other in these pleadings, it appears that the schooner, while prosecuting her voyage, was captured by certain subjects of the king of Great Britain, acting under his authority, and condemned as lawful prize, against the will and without the fault of the defendant; and that she has never returned to Salem, or any port in the commonwealth; that this condemnation, for what cause does not appear, was in a Vice-admiralty Court, in the island of St. Christopher’s; that from this decree of condemnation there was an appeal to the lords commissioners of appeals in prize causes in England, by whom the decree of condemnation was reversed ; and the defendant has received -full compensation, not only “ jfor his schooner and her freight," but also for all “ his goods and merchandise ” on board. Do these facts disclose a loss of the schooner by the enemies of the United States ?
I should much doubt whether the defendant’s plea in bar is suf ficiently particular; the whole consisting only in the most general allegations that the schooner was captured by the subjects of the king of Great Britain, acting under his authority, and that she was condemned, not stating where, or by whom, as lawful prize, against the will, and without the fault of the defendant. But as no objection has been made on this account, and the case has been argued on its merits, upon them I shall give my opinion. And here 1 cannot omit to observe, that it is impossible for the mind to doubt with which of these parties the justice of the case rests. The defendant has received and now holds the plaintiff’s money. With a good conscience he certainly cannot * retain it; [ * 47 O ] and Tconfess that I should exceedingly regret if he was authorized to do it by the positive rules of law.
I have said that the only question presented, in this case, to the decision of the Court, is, whether the schooner was lost by any acts of the enemies of the United States. For, admitting that in a marine contract, where the only exception is perils of the sea, a capture by “ a man-of-war unknown ” is within that exception (30), yet it does not follow that in such a case as the present, where the events contemplated are “ perils of the sea, fire and enemies of the United States," that a capture, other than that of the enemies of the United States, is within the contract. For when the obligee, as in this case, assumes the risk of the acts of the enemies of the United, States, detention and capture by them; all detention and capture *412 by others is excluded, according to the maxim, Expressio unius est exclusio alterius.
Here nothing is shown to the Court, from which we may conclude that the capture was by “ the enemies of the United States.” All that is said in the plea is, that the schooner was “ captured by certain subjects of the king of Great Britain, acting under his authority, and condemned as lawful prize, against the will, and without the fault of the defendant.” Now, all this may be very true, and yet the loss be in no sense a loss by the “ enemies of the United States.” The capture and condemnation might have taken place, perfectly consistent with the allegations in the plea, for causes, for which no one can suppose that it was the intention of this contract, that the plaintiff should risk his money; such, for instance, as smuggling against the revenue laws of Great Britain. For in that case the schooner might have been “ captured by the subjects of the king of Great Britain, acting under his authority, and condemned against the will and without the fault of the defendant.” For it is no fault, in a citizen of the United States, not to respect the revenue laws of a foreign country (31). Such a case would have verified every allegation of the defendant’s plea, and yet have been deficient in showing that the loss was by the enemies of the [ * 471 ] * United States. The Court is not informed that Great Britain, at the time of the capture, was an enemy of the United States; such in fact was not the case. It seems to me, therefore, that here is a fatal defect in the plea. But even if this difficulty could be surmounted, I am of opinion that the case, on principles of law and justice, would be with the plaintiff.
In every contract, the first and most important consideration is to discover the intention of the parties; and that intention in all cases, if consistent with the rules of law, is to guide the court in the judgment which they pronounce. Now, it requires no process of reasoning to satisfy any intelligent mind, that it never could have been the intention of these parties that the plaintiff should accommodate the defendant with money, to be employed according to his pleasure; that after he had thus employed it, and received “ full compensation ” for the subject, in which it had been invested, and for all his property related to it (which has happened here ; for the defendant has received full compensation for his schooner, and her fieight, and for all his goods and merchandise on board), it could never have been the intention that, after this, the defendant should rt sist the plaintiff’s demand for repayment.
Bottomry is a contract in nature of a mortgage of a ship, )ii *413 which the owner borrows money, to enable him to fit out the ship, or to purchase a cargo for a voyage proposed; and he pledges the hull or bottom of the ship, pars pro toto, as security for the repayment ; and it is stipulated, that if the ship should be lost by any of the perils enumerated in the contract, the lender shall lose his money; but if the ship should arrive in safety, then he shall receive back his principal, and also the interest agreed upon, which is generally called marine interest, however this may exceed the legal rate of interest (32).
Although the contract of bottomry and that of insurance are in many particulars dissimilar, yet there is a perfect likeness in some others. In insurance, for instance, the insurer is bound to indemnify for all losses which happen by perils against which he insures In bottomry, the lender loses his money when the ship is lost by any of those perils which are * expressed in the [ * 472 ] contract (33). And in both, the rights and duties of the parties depend on the meaning expressed in the contract. There is not an adjudged case, where, from the same or tantamount words made use of, in a bottomry contract, the lender has been adjudged to have lost his money, where the insurer has not been holden to indemnify the assured, upon the happening of the same events; nor is there a single dictum, that I have been able to find, in any of the books to that purpose.
The contract of bottomry, like that of insurance, is merely ex-ecutory. If the risk do not commence, the contract, as a bottomry contract, never takes effect; but is converted into a simple loan (34). If there be a deviation during the course of the voyage, the plaintiff will be entitled to recover upon his contract (35). If the voyage by order of the owners be changed, or if the loss happen by the barratry of the master, or by the misconduct of the merchant, the borrower will not be discharged (36). Si infortunium vel naufragium, ex culpa debitoris processerit, tune creditor non tenetur de periculo et damna in quad incurritur, ex culpa vehentis out alterius (37). If the ship be forfeited for smuggling, to which the lender did not consent, and in which he had no concern, he is not liable for the loss (38). Any misfortune, before the commencement," and after the end of the risk, falls on the borrower. If the voyage be described in the contract, but the time of the commencement and the end of the risk be not specified, the risk, as to the ship, shall commence from the time she sets sail, and continue until she anchors in safety, at her port of destination (39). These principles I have mentioned to *414 show, as well the analogy between bottomry and insurance contracts as to the losses which fall on the lender and insurer, as the genera, principles which have governed in construing them. In both, the rule of decision has been the meaning of the contract. [ * 478 ] * For the same purpose I will cite one more case, which is reported by Viner from a MS. note (40).
Money was lent on bottomry, with a condition that if the ship, which was bound to the East Indies, should return to London within thirty-six months, or if she should not return within that time, or should not be taken or lost within that time, the money to be paid, &c. The ship was detained at Surat in-India by an embargo laid by the Mogul, till after the 36 months had elapsed, and on her return home was taken; and so the bond was forfeited. But there being no fault in the master, and the voyage being thus delayed by inevitable accident, the borrower brought his bill to be relieved against the penalty of the bond. But the Lord Chancellor Harcourt said. “ I cannot relieve against the express agreement of the parties.”
With these principles to guide us, let us recur to the case before us. According to the express agreement of the parties, the money is to be paid in any event, unless the schooner should be lost.
Both Park and Marshall, in treating of bottomry and respondentia, lay down the proposition in the most broad and unqualified terms, that nothing short of a total loss will excuse the borrower; and the case, which they cite and report with very little variation, goes the full length of supporting them in their position (41)
(42).
The condition in that case was, that if, upon the safe arrival of the ship, the defendant should pay the plaintiff the money lent, with the stipulated interest; or if the ship should be lost, be taken by the enemy, miscarry, or be cast away, the bond to be void. The ship “ was taken by the enemy,” detained a month in his possession, then recaptured and restored, after the payment of salvage, by a decree of a court of admiralty.
This case, according to the words of the contract, seems stronger than that under consideration. In that the plaintiff agrees to hazard his money on the event of the vessel being “ taken by the [ * 474 ] enemy; ” in this, only in the event that the * ship was lost by some of the means expressed. Yet Lord Mansfield, in delivering the opinion of the court, according to Marshall, says, “ Upon consideration, we are all of opinion that a taking, within this condition, does not mean a temporary taking, which is only an obstruction, which may last for a day; it must be sum a *415 talcing as, between insurer and insured, would amount to a total loss.” And the words of Lord Mansfield, as reported by Park, are of the same import.
If in a case circumstanced as that of Joyce vs. Williamson, where the plaintiff was to lose his money, “ if the ship was taken by the enemy,” a temporary capture by the enemy is not within the mean ing; surely in a case circumstanced as this is, where the loss of the money is made to depend on the loss of the vessel, “ by perils of the sea, fire, or enemies,” a capture, under what pretence we know not, but where the Admiralty, in the final resort, has decreed restitution, and in consequence thereof the defendant has received full compensation for his vessel and every subject related to the voyage, it cannot consist with justice or any sound principle of law, that, the loss should be thrown upon the plaintiff. No one can pretend that this would amount, in a contract of insurance, to a total loss ; and it therefore results, if the Court of King’s Bench was right in the case of Joyce vs. Williamson, that the facts do not bring this case within the meaning of the condition.
Of the nature and legal effects of a capture, which will apply to this case, Lord Ellenborough, in delivering the unanimous opinion of the Court of King’s Bench in the case of Beale vs. Thompson, has expressed with accuracy the true principles of law. “ Seizure,” says re, “ even hostile seizure, is not necessarily capture, though such is its usual and probable result. The ultimate act or adjudication of the state, by which the seizure has been made, assigns its proper and conclusive quality and denomination to its own original proceeding. If it condemn in such a case, it is a capture ab initia ; if it award restitution, as an act of justice, as the order of the 5th of June, 1801, expressly does, it pronounces upon its own act as not being a valid act of capture, but as an act of temporary seizure and detention * upon grounds not war- [ # 475 ] ranting the condemnation of the property, or the dealing with it as captured.” “ Having stated that the acts in question, although originally of a hostile tendency and aspect, do not amount, according to the result of them, to a case of capture, they cannot, I conceive, of course, have the effects of capture properly attributed to them.” And Lord Alvanly, while the same case was in the Court of Common Pl^as, was manifestly of the same opinion. Ac cording to these opinions, which I deem to be sound law, granting that instead of a risk, which should occasion the loss of the schooner, as is this case, that the plaintiff had assumed the risk of capture by enemies, and that the court could presume that this was such a case of capture, the case would not be brought within the meaning o" *416 the contract; for the plaintiff was not to lose his money, unless the schooner should be lost, which clearly was not the case.
In every view in which I have been able to consider the subject, I think judgment ought to be rendered for the plaintiff.
I regret exceedingly a final difference of opinion in this case; but it has become unavoidable. It has been twice argued before the judges now present. There is one other judge (43) who can sit in the case; but it has been thought by us, unanimously, that it is inexpedient to have it argued before him, as the consequence would be, either an equal division of the Court, and so no judgment could be given, or the majority would be increased; and we all think that it is better that a judgment may be now given, as the majority of the Court are of opinion that the plaintiff is, in another form of action, capable of obtaining that justice, to which we all think him undoubtedly entitled (44).

Plaintiff’s replication adjudged bad.

 3 Term R. 590.

 Marsh. 435.—Emerig. tom. 1, 537.

 Roccus de Assecurat. not. 54, 65.

 Park, 481.

 Emerig de Contracts a la Grosse, ch. 11.

 2 Roll. Abr. 248.—Style, 132.—1 Show. 322. Jeffrey vs. Legendra.

 Planche & Al. vs. Fletcher, Doug. 238.

 Marshall, 632.—Park, 410.

 Marshall, 635. 651.—Park, 421.

 1 Vern. 263

 Skin. 152.

 Marshall, 654.

 Roccus de navib. n. 51.

 Marshall, 654.

 Marshall, 656, 657

 4 Vin. Abr. 281. Ingleden vs. Foster.

 Marshall, 562.—Park, 421, 422, Joyce vs. Williamson.

 [Thomson vs. Roy.—Ex Ass. Co. 1 M & S. 31.—Ed.]

 Judge Thatcher was not present at the argument or the decision of this case

 [Vide Appleton vs. Crowninshield, 8 Mass. 340.—Ed.]