By the Court. Bosworth, J.
A new trial must be granted in this action. It having been tried four times, it is considered that the rules applicable to it should be so distinctly stated that there may be no misapprehension in respect to them on a further trial. •
I. The court hold, first, that the plaintiff cannot recover the stipulated compensation of twenty per cent, without proving a full performance of the contract on his part.
H. If the defendants discharged the plaintiff, and refused to permit him to proceed' in the execution of the contract, the plaintiff would be entitled to recover the value of the services rendered up to the time of such discharge.
III. If the plaintiff voluntarily abandoned the contract upon the rejection of the claim by the Secretary of the Treasury in October, 1844, he is not entitled to recover anything for his previous services.
IY. If the plaintiff and defendants rescinded the special* contract by mutual consent, or upon the mutual understanding that the defendants should take the conduct and management of the business into their own hands, and that the plaintiff should forbear to act any further under the special contract, the latter is entitled to recover what his previous services were actually worth; in such an event, a right of action accrued upon the rescission of the contract, and he would be entitled to recover whether the defendants succeeded in procuring the overpaid duties to be refunded or not, and the amount which he would be entitled to recover would not be affected by the considerations that no part, or that the whole of the overpaid duties were refunded : but in estimating the damages, the jury will take into consideration the nature of the services and of the matter in respect to which they were rendered.
Y. That either, and so many of these matters as may be properly submitted upon the evidence that may be given, *111 should be submitted to the jury as questions of fact, with instructions as to the law, conformable to the preceding propositions.
H. A. Cram, for the plaintiff, moved for judgment upon the verdict, and argued as follows.
I. The motion for a nonsuit was properly denied, because, 1. It required the court to pass upon the following among other questions of fact. The question of performance of the special contract—the questions of abandonment, of discharge, of the rescission and modification of the contract, of reasonable time, &c. This court had already decided that all these were questions of fact to be submitted to the jury.
2. The objection that the contract could not be enforced because plaintiff was a custom-house employee was unsound. The acts of Congress relied on by the defendant apply to certain specified official services other than and distinct from the services" rendered by the plaintiff. The plaintiff rendered services that it does not appear that it was the duty of any official to render. It appears distinctly that it was not the official duty of the plaintiff to render any of the services he did. Some of the services plaintiff rendered after he left the custom-house.
•3. The objection that the “contract was void at any rate, and no action lies to "sustain it,” was not well taken. 1. Because no ground of its invalidity is assigned: the ¿bjection should have shown why it was void-. It would be against all precedent to allow, under such a vague and indefinite form, this objection. 2. The contract was not void for champerty or maintenance, or because it is against public policy. It comes within none of the definitions of either champerty or maintenance ; they relate to suits between individuals. Here no suit was contemplated or necessary, be'cause the claim was against the government, which cannot be sued. Hone of the supposed *112 evils arising from champerty and maintenance apply to claims against government. The old doctrines of champerty and maintenance, however suited to the lawless state of society in which they were first recognised, are no longer applicable to the present state of society; instead of tending to protect the weak, as they once did, they would be oppressive to them; they consequently. are being abolished by statute provisions and judicial construction. The revised statutes did away with the doctrine of unlawful maintenance, excepting champerty, in contracts concerning pretended titles to land, and a conspiracy to move and maintain suits. (Small v. Mott, 22 Wend. 403 ; aff’g, p. 2; 20 W. 212.) The Code also has done something in this direction. The contract was not against public policy; public - policy, as recognised by the courts, is never immoral or unjust. If the government has unjustly, and illegally taken the property or money of the citizen, it is the policy of the government to return it. It would be both immoral and unjust for the government to retain the money, or to conceal the evidence of the illegal spoliation of the citizen. It cannot be against public policy to vindicate the honor and justice of the nation, and a contract to procure the necessary evidence to enable the government to repair a wrong committed by it, tends to vindicate its honor and justice.
*111 VI. That if the proposition be insisted upon, that the special contract was void on the ground of its being contrary to public policy; it is advised that any verdict which the jury may render upon the questions of fact should be rendered subject to the opinion of the court upon the questions of law.
*112 H. Hone of the exceptions to the charge are well taken. 1. The only direct exception to the charge, that the questions of discharge and abandonment were questions of law and not of fact, has been already otherwise decided by the court. 2. The third request, to charge as a whole, was erroneous, because under the circumstances mentioned in it, a special count was not necessary. This court has so' held—see cases collected in notes to Cutler v. Powell, 2 Smith’s Leading Oases, 25. In case of an improper discharge from employment, a special count is only necessary to justify a recovery for the whole amount stipulated in the contract; a recovery may be had under the quantum meruit for the value of the services up to the time of discharge. 3. The other requests to charge that conflict with the charge given, were erroneous; most of them require the court to pass upon questions of fact as questions of law.
S. Sanxay and J. W. Gerard, for the defendant,
insisted that the verdict ought to be set aside and a judgment of nonsuit be entered, and rested their argument mainly upon the following points and authorities.
First: The case shows a special agreement between plaintiff and defendants in the nature of a reward to pay plaintiff 20 per cent, of a claim against Government, if he should recover it, and actually get the money back, which special agreement the plaintiff did not perform. (White v. Snell, 5 Pickering, 425, S. C. 9 Pick. 16.)
I. The only questions in the cause were : Did plaintiff perform this special agreement? Did he get defendants their money back ? Did he earn the reward, by performing personally, or by agents, every act essential to the inducing the Government to pay back the money; and did he so induce the Government ?
Unless these questions can all be answered in the affirmative, the plaintiff is not entitled to recover.
II. Getting the money back was a condition precedent to his being entitled to anything. Upon the performance of that condition by plaintiff, he was entitled to his reward in full; and if defendants prevented his performance, he could only recover upon declaring specially upon the agreement, and averring a readiness to perform and a tort on the part of the defendants in preventing his performance. He might declare upon the money counts for a performance, but for a breach of the agreement he must declare specially. (Pullman v. Corning, 14 Bar. 174; Young v. Preston, 4 Cranch, 239 ; Lawes on Pleading in Assumpsit, chap. 1; Feeter v. Heath, 11 Wend. 447, 9 Peters, 541; Hull v. Heightman, 2 East, 145 ; Bradford v. Albany Dutch Church, 8 Cowen, 500.)
III. The contract was entire and could not be apportioned. An entire sum, to wit, 20 per cent, of the claim of defendants upon Government, was to be paid for an entire work, to wit: getting said claim paid by Government, and an entire performance by plaintiff must be established before he can be entitled to anything; and this is so, though the completion be prevented by accident, as by death, fire, &c. This being a claim of a *114 specific commission for personal services contracted to be done, there is no room for a recovery under a quantum meruit for his services in attempting to perform his contract and failing. This case restores the doctrine of Cutter v. Powell. (Pullman v. Corning, 14 Bar. 174, affirmed in Court of Appeals in September term, 1853; Cutter v. Powell, 6 T. R. 326; Hull v. Heightman, 2 East, 145 ; 7 Term, 381; Jennings v. Camp, 13 Johns, 94; McMillan v. Vanderlip, 12 Johns. 165 ; v. Moore, 19 Johns. 337; Faxon v. Mansfield et al. 2 Mass. R. 147 ; 2 Pick. 267; 14 Mass. 282, 286; 3 Mass. 443; Appleton v. Crowninshield, 8 Mass. 340.)
Second. The judge should have ordered a nonsuit. There was no evidence to put defendants on their defence. The declaration being on the common counts in assumpsit, and a special agreement being shown, it was incumbent on the plaintiff to show that it was an executed agreement, and that he executed it. Failing to do this, there was no case before the court for a jury.
Third. The judge erred in his charge, and misled the jury. He should only have presented the questions to the jury, whether there was a special agreement between plaintiff' and defendants, and if so, was it performed by plaintiff or his agents %
Fourth. The judge should have charged as requested. The verdict was contrary to law, and not warranted by the evidence. All the evidence goes to show that plaintiff did not perform his agreement in the most essential particular, viz. in getting the money ; but that after an-unsuccessful effort to do so, he abandoned the undertaking, and knowingly permitted the defendants to engage George Curtis, Esq., to perform the work which he had failed to accomplish, without a single word of objection or even comment on his part; and he quietly, stood by and saw Curtis do what he had agreed to do without an intimation to anybody that he had any connexion with the case. If this is not an abandonment, what in law or common sense is ?
Fifth. The contract between plaintiff and • defendant was absolutely void. (Stanley v. Jones, 7 Bing. 369.)
The evidence shows that as part of his agreement, the *115 plaintiff was to furnish testimony for the recovery of the debt.
The contract is void, as being within the spirit and the very letter of the act of Hay 7,1822, sec. 17.
Horeover, a contract like the one in question, made by an officer in the service of the Government, as the plaintiff in this suit is shown to be, is against the policy of the law, and against public policy. The policy of the laws of the United States, as will be seen by the following references, is to prevent any officer of the Government from receiving any other or greater compensation than fixed by law.
The following is § 17 of the Act of 7th Hay, 1822: “ If any person employed in any duties in relation to the collection of the revenue, shall accept or receive any fee, reward, or compensation, other than that allowed by law, for any service he may perform for any person, in making any entrance or clearance, or preparing any papers to be used or kept in the Custom House, such person shall be removed from office, and shall moreover, on conviction thereof, pay a fine not exceeding five hundred dollars.”
Same act, sec. 73:—“ And if any officer of the customs shall demand or receive any greater, or other fee, compensation, or reward, for executing any duty or service required of him by law, he shall forfeit and pay two hundred dollars for each offence, recoverable in manner aforesaid, for the use of the party aggrieved.”
Act 26 August, 1842, section 12—“ No allowance or compensation shall be made to any clerk or other officer by reason of the discharge of duties which belong to any other clerk or officer in the same or any other department; and no allowance or compensation shall be made for any extra services whatever, which any clerk or other officer may be required to perform.”
Cram, was fully heard in reply.
Feb. 25th.—Duer, J.,
now delivered orally the opinion of the court that the action, upon the evidence, could not be maintained, and that a judgment of nonsuit must be entered, and stated the following as the grounds of its decision.
*116 I. That whether the plaintiff was, or was not, in the actual employment of the Government when the agreement between him and the defendants was made, was perhaps, upon the evidence, uncertain, but was immaterial, since it was certain that he was a subordinate officer in the Custom House, receiving a salary as such, when he performed the labor and services for which he demanded the price stipulated to be paid by the agreement, and he had himself admitted that it was his position in the Custom House that alone had enabled him to perform the services which he rendered. Hence, the agreement, if not illegal and void in its origin, was rendered so by the mode of its execution, and it was clear that this mode was contemplated by the parties when the agreement was made. It was not necessary to be shown that it was the special duty of the plaintiff to search for the entries that, in order to sustain the claims of the plaintiff, were requisite to be found.. It had been clearly proved that this was the duty of a subordinate officer or clerk, when so directed by the Collector, and that this direction was always given when requested by a merchant having an interest in the- performance of the duty. It was in fact a duty, the performance of which, every merchant having claims upon the Government that could only be established by the production of his entries, was entitled to demand. Such was very properly the understanding of the Collectors themselves, two of whom had proved that it was customary, not only to produce the original entries in such cases, but to furnish the statement which they justified, and this, in all cases, without charge to the merchant; no charge being made, for the plain reason that no compensation for such services had been provided by law. If the plaintiff, in performing t-hese services, acted under an order or direction from the Collector, he had no more right to demand, or make an agreement for, a compensation, than would have belonged to any other clerk upon whom the same duty had been imposed. If no such direction was given to him he had no right to act at all, and certainly could not, by acting without authority, entitle himself to a reward which he could not otherwise have claimed. His want of-the necessary authority would then be an additional reason for holding his agreement to be void. It was not necessary to decide whether *117 the case was within the exact words of any of the acts of Congress which had been referred to by the counsel for the defendant—it was plainly within the spirit of them all—nor had the court any difficulty in holding that, if the contract, upon which the plaintiff founded his action, was not prohibited by statute, it was illegal and void at common law, as implying extortion, leading to manifest abuses, and contrary to imperative reasons of public policy, and exactly the same reasons which must have influenced Congress in the passage- of the acts that had been cited. Indeed all these acts, in their principle, were only declaratory of the common law.
The allegation that the agreement was justified by the state of confusion and disorder in which the papers in the Custom House then were, could not be listened to. The labor of a search for the entries, and the uncertainty of its result, could not vary the right of the merchant to demand, or the duty of the Collector to order, that the search should be made, and it might just as well be successful under such an order as under a special agreement. Were the law to admit such an excuse, confusion and disorder would probably be the condition in which the papers in every public office would usually be found, and the difficulty of finding the papers required, and their supposed loss, would be constantly urged to justify the demand of a special reward for their recovery. To admit the excuse would be to encourage negligence and stimulate extortion.
H. That the agreement, if valid when made, and when the services of the plaintiff were performed, ceased to exist when the application for a return of the duties illegally exacted, was denied by the Secretary of the Treasury in October, 1844. The terms of the agreement contemplated a return of the duties as the result of an application to the Government, not of a hostile suit against the Collector to whom they had been paid. Hence the denial of the application upon an objection, which so far as the parties then knew could not be removed, was the natural termination of the agreement. The plaintiff’s efforts had failed of success, the condition upon which his right to a compensation depended had not been performed, and nothing further remained to be done. It is true the parties, had they pleased, might have continued the agreement in force, but *118 positive evidence was necessary to show that such was their intention and understanding, and no such evidence had been given. On the contrary, the evidence that had been given of the acts and conduct of the parties justified the belief that by all of them the agreement was considered to be at an end. The suit against the former Collector was not instituted by the plaintiff, nor under his advice, nor with his co-operation. He was in no sense a party to the new agreement with Mr. Curtis, under which the suit was instituted, and it was absurd to suppose that the mere fact that he was examined as a witness upon the trial revived the agreement, or was any evidence that it was still in force, or upon any ground gave him a title to the compensation which he claimed. From the time of the com-, mencement of this suit until the satisfaction of the judgment that was obtained there was no proof of any act, proceeding, effort, or claim on the part of the plaintiff, that could warrant the inference or suspicion that the original agreement between him and the defendants was regarded by him as still subsisting. Under these circumstances it was not necessary or proper that the question whether the agreement had been abandoned or rescinded by the parties, should have been submitted to the jury. The burden of proof was upon the plaintiff to show that notwithstanding the failure of his application to the Government the agreement under which it was made remained in force, and this necessary proof had not been given.
Lastly: To entitle the plaintiff to recover at all it was necessary to be proved, as his counsel had properly admitted, that the agreement had on his part been fully performed, and that the refunding of the duties illegally exacted was the consequence of his services and efforts. The evidence, however, upon the trial clearly proved that the return of the duties by the Government was the fruit of the judgment, and of the order from the Treasury, which the exertions of Mr. Curtis had alone obtained.
The judges being all of opinion that upon each and all of these grounds the plaintiff ought to have been nonsuited, it was deemed unnecessary to consider any of the other questions that had been raised upon the trial, and upon the argument before them.