Bliss *v.* Matteson.

---

## BLISS *vs.* MATTESON and LITCHFIELD.

An agreement which is designed, or which, in its nature and effect, tends to lead persons who are charged with the performance of trusts or duties for the benefit of others, to violate or betray them, is contrary to public policy, and void.

There is no difference, in principle, whether the trust which it is meant to prevent, is public or private; nor is it material that nothing actually fraudulent or illegal was done, under the contract. It is enough that such is the tendency of it.

An agreement between the plaintiff and defendants, which contained a simple and plain engagement on the part of the latter, to control the action of

Bliss *v.* Matteson.

directors and trustees of an existing railroad corporation, or those of a corporation which was thereafter formed, under their auspices, and to cause such directors or trustees to agree by vote to pay a claim of the plaintiff on account of past due coupons on bonds of the company, without reference to the legality thereof, or to the interests of their *cestuis que trust ;* and in fine, to pay the plaintiff at all events, regardless of their duty to the corporation or its creditors; in consideration that the plaintiff should use his influence to induce the bondholders to fund their coupons ; *Held* to be clearly within the operation of the principle above stated.

THIS action was brought upon the following agreement, signed by the defendants : "In consideration that George Bliss will aid and use his influence in procuring the mortgage bondholders of the Chicago, Alton and St. Louis Railroad Company to fund the interest due and to fall due on their bonds, within three years from the 2d day of October next, we hereby agree with said Bliss, that in case we shall get possession of the road of said company, under arrangements now in progress, we will procure the directors of said company, or of any new company to be formed under a proposed sale of the road, to agree by vote to pay the past due coupons upon thirty-five thousand dollars of third mortgage bonds held by him, and such as shall fall due within three years, and also about eight thousand dollars of first coupons of mortgage bonds owned by him ; and that if we shall continue in the control of said road ourselves, or through directors of either company named by us, will cause the company so controlling said road to pay said past due coupons, with interest, one half in one year, the residue in two years, and the others as they shall fall due. And if the said Bliss shall take bonds for the above, the above shall be binding, if he surrenders the bonds as fast as the above coupons are paid as specified.

New York, September 10, 1856.

J. A. MATTESON,
E. C. LITCHFIELD."

Bliss *v.* Matteson.

"I hereby acknowledge that the stipulations on the part of George Bliss in the foregoing agreement have been thus far fully performed on his part; the said Bliss still agreeing to use his influence to carry out the original objects of said agreement.

April 24, 1858.      J. A. MATTESON, *Pres't St. Louis, Alton and Chicago Railroad Co.*"

The defendants severed in their answers, and did not set up the same defense, in all respects; but, for the purposes of this appeal, both sought to avail themselves of the same objections; 1. That the agreement was against the policy of the law, and void. 2. That as the plaintiff no longer had the coupons referred to in the agreement, he could not maintain this action. The second defense was set up by the defendant Litchfield in a supplemental answer. The defendant Matteson never put in any supplemental answer, and never pleaded, directly or indirectly, the second defense. The "arrangements now in progress," mentioned in the contract, were designed to fund the coupons in new bonds of the existing company, and to effect a transfer of the road and its franchises to the defendants and a preference of some of the creditors out of its earnings and proceeds. The several steps of those "arrangements," appear in the case, and include the following: The company in August, 1855, being insolvent, made a lease of its road and franchises for a term of ten years, to Spencer; and Spencer assigned the lease to Brown Brothers & Co. to secure a debt owing to that firm by Dwight. In January, 1856, the company made a general assignment to Fullerton, Brown and Keating, in trust for the payment of the company's debts. In August, 1866, the company issued a circular requesting the holders of its bonds to fund their coupons in a new series of bonds, called fourth mortgage bonds. September 1, 1856, the

defendants made a contract with Spencer, by which, among other things, the defendants undertook to buy Brown Brothers & Co.'s interest, and provisions were made with a view to the defendants' buying the road and franchises from Fuller and others, the general assignees, and placing it in a new company, and ultimately providing thereout for the creditors of the company. At the time the contract in suit was made, no coupon holders had assented to the proposed arrangement. In this state of things the contract in question was drawn up by Bliss and proposed to the defendants.

After having obtained from Matteson a large sum in cash, for a part of his coupons, Bliss brought this action, in 1862. In 1863, while the action was pending and at issue, the plaintiff disposed of all his coupons to a committee of a new railroad company (the Chicago and Alton Railroad Company) and received bonds and stock of such new company therefor, and afterwards sold the stock so received.

The action was tried at the Kings county circuit, in April, 1864, before Justice BROWN and a jury. When the plaintiff rested, the counsel for the defendants moved to dismiss the complaint, on the ground that the agreement on which the plaintiff relied was contrary to the policy of the law, invalid and void; that the plaintiff had not produced the coupons, and had not shown himself able to deliver them to the defendants in case they performed the alleged guaranty of payment; that the plaintiff had parted with the coupons, and had lost all interest in the alleged agreement, and that the plaintiff had established no cause of action.

The counsel for each of the defendants severally made the like motion for each defendant. The court dismissed the complaint, and the plaintiff's counsel excepted to the decision. The court ordered the exceptions to be heard in the first instance at general term, and that thirty days'

time be given to the plaintiff to make a case containing exceptions.

*Bliss & Cadwallader*, for the plaintiff. I. The plaintiff did what he agreed to do. This is proved by the uncontradicted testimony, and by the admissions of the defendants.

II. The conditions upon which the defendants undertook to carry out their agreement were brought about; at least the uncontradicted evidence of the plaintiff upon this point was sufficient to go to the jury. They did "get possession of the road" "under the arrangements in progress" at the time of making the agreement, and their obligation to procure a vote to pay the coupons then became fixed. They also "continued in the control of the road," so that their obligation to procure the payment of the coupons became also fixed.

III. The defendants have not done what they agreed to do. This is admitted by the failure to deny in their answers the allegations to this effect.

IV. This brings us to the two real questions involved in this argument: *First*. Was the agreement against the policy of the law, and so void? *Second*. Does the fact, that after the commencement of the action, the plaintiff parted with the possession of the coupons, prevent him from maintaining the action? 1st. The agreement is not against public policy, nor is it void. It will hardly be contended that the plaintiff was guilty of any moral wrong, or that when he took the agreement he supposed he was doing any thing against the policy of the law. We fully admit, that if this was a case of one creditor signing a composition deed, and then secretly exacting from his debtor more favorable terms than the other creditors got, it would be void. The cases upon this subject are too numerous, and too well known to require citation. Fraud is not to be presumed.

This agreement differs in various respects from any reported case. 1. It was not kept or intended to be kept secret. 2. It was an agreement, not with the debtor, but with other persons, who had a private and personal interest in carrying out the arrangement proposed, and in which the debtor had no interest. 3. It was an agreement to compensate for services to be rendered and expense to be incurred by the plaintiff, and was not an attempt to get more than others got. 4. It was not exacted, but voluntarily proposed. (*a.*) As to secrecy. The evidence is clear on this point. There was no agreement of secrecy, and no understanding to that effect. No one to whom the plaintiff applied could have supposed that he was any thing but an agent. It was not to be supposed that he was traveling about the country advising persons to sign the agreement to extend the time of payment, at his own expense and without compensation. That he did so travel is shown. (*b.*) It was an agreement with third persons, who were seeking to advance their own interest, not the debtor's. No case can be found where such an agreement has been held invalid. Agreements with third persons have in several cases been held invalid, but they were all cases where the third person was seeking to advance the debtor's interest, not his own, or where the arrangement contravened a particular statute. (*c.*) It was an agreement to compensate for services to be rendered, and expenses to be incurred by the plaintiff. An agreement to pay for services to be rendered, and expenses to be incurred, cannot be invalid. It involves no fraud on the other creditors. A debtor may employ an agent to procure his creditors to assent to a compromise, and may pay him for his services and expenses. If the agent is also a creditor, it can make no difference, so long as the payment is to be made in good faith, for services rendered and expenses incurred, and not as a mere cover. If a debtor may so employ a creditor, a third person, having a private interest to advance, may surely do so; and in either case,

Bliss *v.* Matteson.

the mode in which the payment is to be made, whether in cash or otherwise, can make no difference. Among the numerous cases upon this subject, none go so far as to invalidate such an agreement. (*d.*) It was voluntarily given, not exacted. One part of the agreement of the defendants is clearly valid, namely, that which obliges the defendants to procure the railroad company to " agree by vote to pay " the coupons. So far as that part of the agreement is concerned, if the defendants had within a reasonable time procured the company to vote to pay the coupons at the time fixed by the compromise agreement, it would have been a compliance with their undertaking. What was desired, under that clause of the agreement, was a recognition of the coupons as valid. The defendants failed to perform this part of the agreement, and were liable for their failure so to do. As to the other part of the agreement, the undertaking to cause the company to pay the past due coupons, one half in one year and the residue in two years, not only was it on the principles already laid down valid, but it was not necessarily an anticipation of the payment. The defendants, in their circular of October, 1856, which formed part of the arrangements in progress, say, that payment may probably be anticipated; and Exhibit B. shows that, in point of fact, this was done to a large amount. During the year ending September 30, 1857, $31,000 of interest on bonds was paid, and in the quarter ending December 31, 1857, $6070.20 more was paid. This is besides the large amount of local debts and other interest, (together over $600,000,) which was paid during the same period. 2d. The agreement of creditors was, by the admission of the defendants, not carried out, and cannot, therefore, constitute a defense to this action. 3d. The defense founded upon the fact that the plaintiff had parted with the coupons at the time of the trial, is untenable. He held them at the time the action was commenced, at which time the defendants were in default, and liable in

damages. Subsequently, the affairs of the railroad company assumed such a position, that unless the holder of the coupons availed himself of a new proposal of compromise, they would be valueless. He therefore surrendered them and took other securities; the transaction being clearly one for the benefit of all interested; this was done, as the plaintiff supposed, with the consent of one at least of the defendants. This objection seems to proceed upon the idea that the defendants were guarantors of the coupons, and that they are therefore entitled to the delivery to them of the paper, when they comply with the terms of the guaranty. But this is obviously not their position. They *guaranteed* nothing; they agreed to do certain things which they have failed to do, and they are therefore liable in damages. In estimating the amount of these damages, they are to make good the injury the plaintiff has suffered by their default. This injury is the value of the coupons, at the time they agreed they should be paid, with interest from that time, less the amount the plaintiff realized for them. This was an original agreement of the defendants, and comes within none of the definitions of a guaranty. (*Burrill's Law Dictionary,* article " *Guaranty* " and " *To Guaranty.*" 3 *Kent's Com.* 162.) The objection arising out of the non-possession of the coupons was certainly not available to the defendant Mattison; he had not pleaded it, or set it up in any way, probably because his counsel had assented to it.

V. The court erred in various rulings as to the admission of testimony.

VI. The exceptions to the order dismissing the complaint should be sustained, and the case sent back for a new trial.

*John E. Burrill,* for the defendant Matteson. I. The agreement sued on is contrary to public policy and void. 1. It obligated the defendants to procure the directors of

the existing company, or of any new company which might be formed, to agree by vote to pay the coupons therein referred to; and, further, if the defendants continued in the control of the road, either by themselves or through directors of either company, it obligated them to cause such company to pay the coupons within the period referred to. 2. Bliss knew that the "arrangements now in progress," mentioned in the agreement under which the defendants were to get possession, were those mentioned in Ex. C and V, which provided that, on the contemplated purchase, the board of directors should consist of nine persons named, of whom five were to be nominated by Matteson and four by Litchfield, and that those persons should continue to be the directors of the old company, and of any new company thereafter to be formed, for three years. 3. Bliss therefore contemplated that the defendants, whose creatures were to be the directors, should control the action of the directors, and procure them to *vote* for the payment of the plaintiff's coupons without regard to their duty to the company, stockholders or creditors. 4. Bliss further contemplated that if the defendants should succeed in their scheme of nominating the directors for three years, and keeping the control of them for that time, the defendants should *cause* the company to pay. 5. It will thus be seen that the covenants of the defendants were conditioned upon their procuring the control of the board of directors, by nominating men devoted to their interests, and subservient to their wishes. And that, in that event, the defendants undertook to procure these directors to act officially in a certain direction, and to vote in a particular way. 6. The consideration of these covenants on the part of the defendants, (if the agreement was based on any consideration,) was a pecuniary benefit, or what was supposed and believed to be a pecuniary benefit to the defendant; so that the plain import of the defendant's agreement was, that for money they agreed to

procure the directors of a corporation not to take into consideration the claims of the plaintiff, and to act upon them as justice and honesty might dictate, after a fair consideration and investigation, but, under all circumstances and all events, to vote in a particular way. We submit that the agreements stand on the same footing with, and are of the same general character as an agreement for lobby services, and other similar contracts, which have been repeatedly held to be void, as against public policy. (*Fremont* v. *Stone*, 42 *Barb.* 169.) Where the agreement was to cause new directors, nominated by the purchaser, to be substituted in the place of the old. (*Davison* v. *Seymour*, 1 *Bosw.* 90.) Where an agreement to procure a contract from railroad directors was held illegal, and cases therein cited. (*Mills* v. *Mills*, 30 *Barb.* 474, *and cases there cited.*) Where a full reference is made to numerous authorities. (*Bell* v. *Leggett*, 3 *Seld.* 176.) Where the general principle is well settled. (*Marshall* v. *Balt. R. R. Co.*, 16 *How. U. S.* 314. *Grag* v. *Hook*, 4 *Comst.* 449. *Devlin* v. *Brady*, 32 *Barb.* 518. *Satterlee* v. *Jones*, 3 *Duer*, 116, 117.) The contract being void, for the reasons stated, the court will not aid either party in carrying it into effect, but will leave the parties where it finds them. (*Nellis* v. *Clark*, 4 *Hill*, 424. *Mozely* v. *Mozely*, 15 *N. Y. Rep.* 334. *Gray* v. *Hook*, 4 *id.* 449.)

II. The plaintiff, by surrendering and parting with the bonds and coupons in question, and receiving in lieu thereof the bonds and stock of another and distinct corporation, lost all claim on the defendants under the contract. The defendants, on payment to the plaintiff of the amount mentioned in the contract, are entitled to the securities therein specified, and to be subrogated to all the right of the plaintiff in respect thereto, and the plaintiff, by his surrender and conversion thereof, changed the form of the security and substituted a new debtor for whom the defendants never became responsible, and thus deprived the

Bliss *v.* Matteson.

defendants of the means of indemnity, whereby the defendants have become discharged. (*Bellington* v. *Wagoner*, 33 *N. Y. Rep.* 31, *and cases cited. Dorlon* v. *Christie*, 39 *Barb.* 610. *Smith* v. *Townsend*, 25 *N. Y. Rep.* 479. *Henderson* v. *Marvin*, 31 *Barb.* 297. *LaFarge* v. *Herter*, 9 *N. Y. Rep.* 241.)

III. Even if the exceptions to evidence were well taken, they will be disregarded, as the result could not have been changed. (44 *Barb.* 640. 20 *N. Y. Rep.* 244–246. 25 *id.* 501–510.)

*Charles Tracy*, for the defendant Litchfield. I. The contract on which the plaintiff founds his action was illegal and void. 1. The consideration of the contract was illegal, and rendered the promise of the defendants void. The consideration was, that Bliss should use his influence to induce the holders of coupons to join in the agreement to fund the same in new bonds of the same company ; while, by the contract, he was to retain his own coupons and have better terms. He was to recommend and advise others to go into the funding arrangement, and lead them into it, in the belief that he was sharing equally with them, while he was securing a further private advantage. The thing he assumed to do, was a studied fraud on other coupon holders. (*Russell* v. *Rogers*, 10 *Wend.* 473. *Breck* v. *Cole*, 4 *Sandf.* 79. *Carroll* v. *Shields*, 4 *E. D. Smith*, 466. *Higgins* v. *The Mayor*, 10 *How. Pr.* 363. *Pinneo* v. *Higgins*, 12 *Abb.* 334. *Townsend* v. *Newell*, 22 *How. Pr.* 164.) 2. The contract was illegal, because it was a promise of the defendants to control the action of a board of directors of a railroad corporation. (1 *Redfield on Railways*, § 140. *Davison* v. *Seymour*, 1 *Bosw.* 88, 91. *Fremont* v. *Stone*, 42 *Barb.* 169. *Mills* v. *Mills*, 36 *id.* 474. *Devlin* v. *Brady*, 32 *id.* 518. *Brown* v. *Brown*, 34 *id.* 533. *Tool Company* v. *Norris*, 22 *Wallace*, 45. *Marshall* v. *Balt. and Ohio R. R. Co.*, 16 *How.* 314.) 3. The action of the

board of directors, which this contract required the defendants to produce, would be unlawful, even if it was done spontaneously. The new company would be under no obligation to pay coupons of a former company, held by Bliss, and it would have no consideration for so doing; and if the directors should vote or pay as the contract proposes, it would be a breach of trust. (1 *Redfield on Railways,* § 135. *Colman* v. *Eastern Counties R. R. Co.,* 4 *Eng. R. Cas.* 513. *Solomons* v. *Laing,* 6 *id.* 289, 301. *Bridgeport City Bank* v. *Empire Stone Dressing Co.,* 30 *Barb.* 421; 19 *How. Pr.* 51. *Morford* v. *Farmers' Bank of Saratoga Co.,* 26 *Barb.* 568. *Bank of Genesee* v. *Patchin Bank,* 13 *N. Y. Rep.* 309.)

II. If the contract were legal and valid, the plaintiff could not recover in this action, because he has parted with the coupons and retains no interest in them. 1. These coupons were promissory notes of the old company. (*Conn. Mut. Life Ins. Co.* v. *Cleaveland, &c. R. R. Co.,* 41 *Barb.* 9. 2 *Redfield on Railways,* § 239. *White* v. *Vermont, &c. R. R. Co.,* 21 *How. U. S.* 575. *Morris Canal and Banking Co.* v. *Fisher,* 3 *Am. Law Reg.* 423.) 2. The contract in question, if valid, was, in effect, a conditional guarantee of those notes; and if the defendants were compelled to pay the money on such guarantee, they would be entitled to subrogation to the plaintiffs' demand and possession of the coupons. (*Lewis* v. *Palmer,* 28 *N. Y. Rep.* 271. *Van Horne* v. *Everson,* 13 *Barb.* 526. *Hayes* v. *Ward,* 4 *John. Ch.* 123.) 3. The plaintiff has disposed of the coupons, and disabled himself to deliver them to the defendants, in case they were compelled by this suit to make payment of his demand. The guarantors are thereby discharged. The plaintiff never tendered the coupons, and he did not, and could not, produce them on the trial. (*Best on Evidence,* 92. 2 *Greenl. Evidence,* § 156. 4. The contract, if valid, was a guarantee, and, therefore, incidental and collateral to the principal debt

Bliss *v.* Matteson.

on the coupons. The transfer of the coupons carried the guarantee with them. The plaintiff having parted with all his coupons, retains no right or interest in the guarantee. (*Jackson* v. *Blodget*, 5 *Cowen*, 202. *Langdon* v. *Buel*, 9 *Wend*. 80. *Rose* v. *Baker*, 13 *Barb*. 230. *Green* v. *Hart*, 1 *John*. 580.)

*By the Court*, GILBERT, J. This action was brought upon an agreement, bearing date September 10, 1856, whereby the defendants agreed, in consideration that the plaintiff would aid and use his influence in procuring the mortgage bondholders of the Chicago, Alton and St. Louis Railroad Company, to fund the interest due, and to fall due, on their bonds, within three years from the 2d day of October then next, they, the defendants, would, in case they should get possession of the road of said company, under arrangements then in progress, procure the directors of that company, or any new company to be formed, under a proposed sale of the road, to agree by a vote to pay certain coupons of said company, held by the plaintiff, then past due, and such as should thereafter fall due within a period specified ; and that if the defendants should continue in the control of the road themselves, or through directors of either company named by them, they would cause the company so controlling said road, to pay said past due coupons, with interest : one half in one year, the residue in two years, and the others as they should fall due. No question was made of the performance of the contract by the plaintiff. At the time of the execution of this contract, the property of said corporation was incumbered by three mortgages, amounting, in the aggregate, to four millions and a half. Its franchises and property had been leased for twenty years, from 31st August, 1865 ; the corporation was hopelessly insolvent, and its franchises and property had been assigned to trustees, who then held the same upon trust, for the payment of its debts and

liabilities. The "arrangements then in progress," mentioned in the contract, consisted of negotiations and agreements between the defendants and other persons largely interested in said corporation, the main object of which was the formation of a new corporation out of the debris of the old one, the board of directors of which should be composed of nine persons, five of whom should be in the interest of said Matteson, and four of whom should be in the interest of said Litchfield. The evidence shows that the new corporation was formed, and that the plaintiff was familiar with these arrangements during their progress, and after the completion of them.

The question is, whether this agreement is among that class which is deemed contrary to public policy, and, therefore, illegal and void. The law upon this subject inculcates a high morality, and the courts, in administering the rule, from time to time, so far from relaxing it, have constantly shown a disposition to apply it with increasing rigor. The rule is, that an agreement, which is designed, or which, in its nature and effect, tends to lead persons who are charged with the performance of trusts or duties for the benefit of others, to violate or betray them, is contrary to public policy, and void. (*Fuller* v. *Dame*, 18 *Pick.* 472. *Davison* v. *Seymour*, 1 *Bosw.* 88. *Satterlee* v. *Jones*, 3 *Duer*, 102. *Devlin* v. *Brady*, 32 *Barb.* 518. *Spinks* v. *Davis*, 32 *Miss. Rep.* 152. *Marshall* v. *Balt. and Ohio R. R. Co.*, 16 *How.* 314.) There is no difference in principle, whether the trust, which it is meant to pervert, is public or private; nor is it material that nothing actually fraudulent or illegal was done under the contract. It is enough that such is the tendency of it. (*Cases supra.*)

The agreement under consideration contained a simple and plain engagement, on the part of the defendants, to control the action of the directors and trustees of the existing corporation, or those of the corporation which was thereafter formed under their auspices, and to cause such

directors or trustees to agree, by vote, to pay the plaintiff's claim, without reference to the legality thereof, or to the interests of their *cestuis que trust;* and, in fine, to pay the plaintiff at all events, regardless of their duty to the corporation or its creditors.

We are of opinion that the case before us is clearly within the operation of the principle stated.

In the view thus taken of the case, it becomes unnecessary to consider the rights of the defendants, arising out of the surrender, by the plaintiff, of the bonds and coupons in question.

Judgment must be entered for the defendants, with costs.

[KINGS GENERAL TERM, February 15, 1868. - *Lott, J. F. Barnard, Gilbert* and *Tappen*, Justices.]