OLIVER W. BARNES, APPELLANT *v.* GEORGE H. BROWN AND OTHERS, RESPONDENTS.

*Incorporation under general railroad act — Contracts — president interested in — Subscriptions for stock — must be for cash — Agreement to transfer control of company — is illegal — chap. 230 of 1868.*

An agreement of the directors to transfer a specified amount of the capital stock and a specified number of the bonds of a railroad company, convertible into stock at the stockholders' option, to a person upon his agreement to pay all land damages to be awarded against the company, construct the road, and pay the expenses of conducting its affairs until the road was completed, no part of the work having then been performed and its value being unknown, is void.

The acquiring by the president of the company, from the contractor, of an interest in such an agreement, is unlawful.

An agreement by the president of a company to transfer his interest in a contract between the company and a third person, and the control and direction of the company's affairs to another person or persons, is illegal and void.

*Semble,* that under the provisions of section 14 of the general railroad act (Laws of 1868, chap. 230), requiring the directors to open subscription books and to distribute the shares *pro rata* among the subscribers, the directors have no authority to receive any thing but cash in payment for subscriptions to stock.

APPEAL from a judgment in favor of the defendants, entered upon a nonsuit directed at the Circuit, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought to recover the damages sustained by the plaintiff by reason of the breach of a contract made with the defendants Brown and Seligman. Upon the trial evidence was given tending to show that on the 26th of March, 1872, the plaintiff was the president and a director of the New York City Central Underground Railway Company; that he owned sixty out of the 117 shares of stock issued by the company; that he had certain claims against it, and that he had an interest in a contract made by the company with one Byrne; that on that day he entered into a contract with Brown and Seligman, by which, in consideration of the transfer by the plaintiff of his said stock, claims and interest in the Byrne contract to them; they agreed to pay to him $27,500, together with 2,000 shares of the capital stock of the company. Evidence was also given tending to show that it was part of the agreement that

plaintiff should transfer to the said Brown and Seligman the control and direction of the company, by inducing certain directors to resign and allowing friends of Brown and Seligman to be elected in their places. The Byrne contract was not put in evidence, but the following recital of its contents appeared from the company books:

"*Whereas*, The second contract made with Mr. Francis P. Byrne, by which he has assumed to pay all the damage for which the company may be liable to private property, and all expenses of organization, conducting the affairs of the company, law expenses, engineering, company's officers, salaries and expenses, etc., and the compensation therefor, in said contract mentioned, being $6,000,000 for the first division, extending from the city hall to near Forty-sixth street, and $2,500,000 for the second division, extending from the north end of the first division to the Harlem river, and the extension from city hall, southwardly to the Battery, and the proposed branch from the main line to the Central park, at Fifty-ninth street. And whereas, it was provided in said contract that should said sums be insufficient, the railway company would make the deficiency good. Now it is

"*Resolved*, That the remaining one million and a half of the share capital of the company, and such portion of the issue of convertible bonds as may be necessary to be thereafter provided for, shall be, and is hereby appropriated as a further compensation to Mr. Byrne on the payments and liabilities assumed by him in said second contract, and the president is hereby authorized and instructed to place the said shares of stock and convertible bonds of the company at the disposal of Mr. F. P. Byrne, for the purpose named in said second contract. And whereas, the share capital of the company, as it now stands, is insufficient to meet the purposes of the company, it is

"*Resolved*, That the president and secretary are hereby instructed to prepare an issue of twenty-five millions of convertible bonds, which may be converted into share capital at the pleasure of the holder, such of said bonds as shall remain after making up the deficiency mentioned in the preceding resolution, shall be paid to F. P. Byrne, in consideration of his assuming the further liability of the payment of the interest on all the bonds of the company, as the same shall accrue, during the period of construction of the railway, and until the works are fully equipped in running order, and

formally delivered over to the company as provided in the contract with said Byrne.

"*Resolved*, That F. P. Byrne shall have the right to sublet the whole or any portion of the work to be done under said contract, and may assign not exceeding a half interest of his contract to one partner."

An interest of forty-five per cent in the contract was transferred to the plaintiff on the 19th of April, 1871. After the execution of the contract of March twenty-sixth, the control of the company passed into the hands of Brown and Seligman, who paid to the plaintiff the $27,000, and thereafter delivered to him certificates for what purported to be 2,000 shares of the stock of the company. The plaintiff claims that the stock was illegally issued and void, and brought this action to recover the damages occasioned thereby, on the ground that the defendants, the directors of the company, had conspired together to issue the stock illegally, and deceive and defraud him. He was nonsuited upon the grounds:

First. That the contract between the plaintiff and Byrne, by which the former claims to have acquired an interest of forty-five per cent, in what has been spoken of as the contract between Byrne and the New York City Central Underground Railway Company, was void, for the reason that the plaintiff, at the time of acquiring the said interest, was the president of and a director of the New York City Central Underground Railway Company, and the plaintiff's contract with Brown and Seligman, upon which this action was founded, was thus void because the assignment of Byrne of such interest in said contract, and the plaintiff acquiring and holding and undertaking to transfer such interest, were contrary to public policy.

Second. That it appears by the plaintiff's testimony that it was a part of his arrangement with Brown and Seligman, pursuant to which the latter were to give him 2,000 shares of full-paid stock of said Underground Railway Company, and a part of the consideration therefor, that the plaintiff, as the alleged holder of the majority of the capital stock of the company outstanding on March 26, 1872, was to transfer the direction and control and management of said Underground Railway Company to said Brown and Seligman with-

out the consent of all the then stockholders, and, therefore, his agreement with Brown and Seligman, upon which this action was founded, was void, as contrary to public policy.

*Homer A. Nelson, Milton A. Fowler* and *John P. Kingsford*, for the appellant.

*L. E. Chittenden*, for respondent T. W. Park.

*Michael H. Cardozo*, for respondent Selover.

*John N. Whiting* and *James P. Lowrey*, for the other respondents.

GILBERT, J. :

The illegality of the transaction between the plaintiff and Brown and Seligman, does not consist of the mere fact that the plaintiff was incapacitated from acquiring an interest adverse to the corporation in the contract between the corporation and Byrne, but in the tendency of that transaction to a perversion of the property and effects of the corporation, and the consequent injury of its innocent stockholders and its creditors. It is not requisite that such should necessarily be the result of the transaction in order to make it illegal. It is enough that such is the tendency of it. The contract with Byrne is not before us, but the minutes of the meetings of the directors of the corporation, at which the plaintiff was present, in connection with the complaint, sufficiently reveal its general character and show that the compensation to Byrne was a gross sum for land damages, the construction and equipment of the railway, and expenses of conducting the affairs of the corporation, to be paid in the stock and bonds of the corporation. We think the directors of the corporation were not authorized to enter into such a contract. The act of incorporation makes the corporation subject to the provisions of the general railroad act. (1 Laws of 1868, 465, chap. 230, § 3.) The directors thereof are required by the act of incorporation to open books of subscription for the capital, and to distribute the shares *pro rata* among the subscribers. (Id., 472, § 14.) Neither the act of incorporation nor the general railroad act confers any

authority upon the directors, to receive any thing but cash in payment for subscriptions to stock. Assuming, however, that the taking of moneys-worth, in a form equally beneficial to the corporation as cash, in payment for subscriptions, would be legal (see Ang. and Ames' Corp. [10th ed.], § 517, *n.* C.), certainly, the agreement with Byrne whereby the corporation agreed to issue stock to him, in a lump, for work unperformed, and the value of which could not have been known, was not founded upon an actual receipt of moneys-worth, nor upon an agreement that moneys-worth should be thereafter received. The capital stock of the corporation is a trust fund for the payment of its debts, and the directors of the corporation will not be permitted to waste it, either directly by releasing subscribers from their subscriptions, or by receiving payment for stock in the form of property or services, at more than a sum which a faithful trustee, in the honest exercise of his judgment, might deem the just value thereof. (Story's Eq. Jur., § 1252; *Upton* v. *Tribilcock,* 1 Otto, 45; see, also, *Boynton* v. *Hatch,* 47 N. Y., 225; *Schenck* v. *Andrews,* 57 id., 133.) The history of this case shows the abuses which would flow from an opposite rule. Here the corporation, by the contract with Byrne, is despoiled of its stock — forty-five per cent of which is then shared with the plaintiff, who was a director; then the plaintiff sells his share to Brown and Seligman, who immediately become directors. The agreement of Brown and Seligman, to deliver stock to the plaintiff, was to be performed by them after they should have become directors of the corporation, and was simply an agreement to deliver the stock as a *bonus* to the plaintiff for the transfer of his interest in the contract with Byrne, an interest which could be made available to plaintiff only through a violation of his duty to the corporation, and which, when transferred by him to Brown and Seligman, could be realized by them only in violation of their duty to the corporation. It needs no argument to show that such a transaction is illegal, for it could not be carried out without a palpable and flagrant violation of trusts and duties which each of the parties owed to the corporation, its stockholders and its creditors. (*Bliss* v. *Matteson,* 52 Barb., 348, and cases cited; S. C., 45 N. Y., 22.)

It was no doubt a part of this transaction that the control of the corporation should be transferred to the defendants, although no

stipulation to that effect was inserted in the written contract between the plaintiff and Brown and Seligman. That, also, was illegal. (*Fremont* v. *Stone*, 42 Barb., 169.)

The plaintiff not being entitled to the aid of the court, in compelling the delivery of *any* stock, by reason of his own illegal acts, it is useless to inquire whether the stock delivered to him corresponded with the description contained in his contract with Brown and Seligman, or whether the defendants, or either of them, were guilty of the fraudulent conspiracy alleged.

The judgment and order denying a new trial must be affirmed, with costs.

DYKMAN, J., concurred; BARNARD, P. J., not sitting.

Judgment and order denying a new trial affirmed, with costs.